UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONY INSURANCE COMPANY,<br><br>               Plaintiff,<br><br>     v.<br><br>MT. HAWLEY INSURANCE COMPANY,<br>*et al.*,<br><br>               Defendants. | Case No. 18-cv-00519-SI<br><br>**ORDER GRANTING MT. HAWLEY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING COLONY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 70, 71 |

On April 11, 2019, the Court held a hearing on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court GRANTS defendant Mt. Hawley Insurance Company's motion for summary judgment and DENIES plaintiff Colony Insurance Company's motion for summary judgment.

**BACKGROUND**

On December 15, 2017, plaintiff Colony Insurance Company ("Colony") filed this lawsuit in Alameda County Superior Court against defendants Mt. Hawley Insurance Company ("Mt. Hawley") and Gemini Insurance Company. Dkt. No. 1. Mt. Hawley removed the case to this Court on January 24, 2018, and thereafter Colony amended the complaint several times to add two additional insurance companies as defendants.

The operative complaint is the third amended complaint ("TAC"). Dkt. No. 44. The TAC alleges that Colony and the defendant insurance companies each issued one or more insurance policies to Pro Craft Builders, Procraft Builders, Promax Builders, Inc., and Pro-Max Construction

(collectively "PB"), and that all of the insurance policies contained similar language and provided coverage for "property damage." The TAC alleges that PB was sued in state court for "property damage" in 2015 in the *Contempo* Cross-Action and that PB tendered the claim to Colony and the defendant insurers. According to the TAC, Colony agreed to provide a defense pursuant to a reservation of rights and the defendant insurers denied coverage. TAC ¶¶ 21-36. The TAC alleges claims for equitable contribution and declaratory relief. Colony has reached settlements with all defendants except Mt. Hawley. Now before the Court are cross-motions for summary judgment filed by Colony and Mt. Hawley.

## I. The *Contempo* Cross-Action

The TAC alleges that in October of 2013, HRB Consulting filed a civil complaint against Contempo Homeowners' Association ("Contempo HOA") in Alameda County Superior Court ("the *HRB* Action"). The TAC alleges that the "property at issue in the *HRB* Action consists of 698 residential units in 168 buildings and associated structures, collectively known as 'Contempo Condominiums' at 4190 Gemini Drive, Union City, California ('Subject Property')." TAC ¶ 8. According to the TAC, the complaint in the *HRB* Action alleges that HRB and Contempo HOA entered into written contracts in 2001 and 2008 through 2010 whereby HRB was to perform field construction management services and related activities for painting, siding, and re-roofing projects at the Subject Property. *Id*. ¶ 9. HRB alleged that Contempo HOA breached the contract and owed HRB money for unpaid services. *Id*.

On March 25, 2015, Contempo HOA filed a cross-complaint against HRB and multiple defendants (the "*Contempo* Cross-Action"), including PB. *Id.*; *see also* Def's Ex. 1 (cross-complaint) (Dkt. No. 71-3). The cross-complaint alleges,

> At all material times, Cross-Complainant Contempo was and is now a nonprofit mutual benefit corporation, duly organized and existing under the laws of the State of California. The membership of Contempo is exclusively comprised of the owners of all of the residential units within the common-interest development association within the meaning of California Civil Code Section 4100, and California Code of Civil Procedure ("C.C.P.") Section 5980, and brings these causes of action for, among other things, damages to common areas and separate interests under C.C.P. Section 5980.

2

*Contempo* Cross-Complaint ¶ 1.  The cross-complaint also alleges,

> 18.  Pursuant to a Declaration of Covenants, Conditions and Restrictions recorded in the official records of the Recorder of the County of Alameda, as it may have been amended, Contempo is charged with the responsibility for the management, operation and maintenance of the common areas including, but not limited to, all facilities and improvements for certain real property located at and about 4190 Gemini Drive, Union City, California, more particularly described as subdivision map of Tract 3204, Map Book 65, at pages 77 to 79 inclusive. The Subject Property consists of 682 residential units in 168 buildings, including an office structure and a club-house structure, with related amenities, and is commonly known as Contempo Condominiums.

> 19.  On or about August 15, 2001, PB and ROES 1 through 10 entered a contract with Contempo whereby PB was to perform construction work replacing and repairing siding on the Subject Property, as well as related activities (the "PB Contract").

*Id*. ¶¶ 18-19.  A copy of the "PB Contract" was attached to the cross-complaint.  The PB Contract is a bid form dated August 15, 2001 for work on 12 "units" in "Building Three." *Id*. Ex. A.[1]  The *Contempo* cross-complaint alleges,

> 23.  PB . . . substantially, materially, and repeatedly breached the PB Contract because they failed to perform their work in a workmanlike manner, in conformance with the plans and specifications, or in accordance with the relevant industry standards, failed to properly manage and inspect their work under that contract, and their field construction management services and related activities produced and/or allowed defective labor and/or materials on the Project, approved or failed to inspect defective workmanship whose defects related in water and other damages to property other than the Work, and because of other violations of the terms and conditions of the PB Contract.

*Id*. ¶ 23.

Contempo HOA alleges the following causes of action against PB:  (1) breach of contract; (2) negligence; (3) recovery under Cal. Bus. & Prof. Code § 7031(b); (4) breach of the covenant of good faith and fair dealing; and (5) declaratory relief.  The negligence claim incorporates by reference all of the prior allegations and alleges,

> Upon information and belief, each Cross-Defendant was familiar with residential multi-family construction techniques, including but not limited to, techniques for supplying labor and/or materials for painting, siding, exterior roofs and related

---

[1]  Attached to the *Contempo* cross-complaint are copies of job estimates by the other cross-defendants and contracts between Contempo HOA and the other cross-defendants.  *Id*. Ex. B-H. The job estimates and contracts are dated 2001, 2008, 2009, 2010, and 2011.  Attached to Job Estimate prepared by Professional Painting Company, dated August 19, 2011, is a map of the Contempo development showing, *inter alia*, numerous units and "Cabana 1" and "Office and Pool 1." *Id*. Ex. B.

building components, together with miscellaneous labor, skills, services, work and materials and equipment customarily incorporated therein. . . . [E]ach of the Cross-Defendants sued herein owed a duty of care to Contempo to insure that they, themselves, and the other person or entities managed or controlled by them, supplied labor and materials for manufacturing, distribution, application, construction and/or inspection of such systems and/or components in a reasonable and workmanlike manner, with proper instructions for application, so that the systems and components, and the completed project would be free from unusual defects, and would require only normal maintenance. Each of the Cross-Defendants sued herein also owed a duty of care to Contempo, arising from the Contracts to act according to the terms and conditions thereof.

*Id.* ¶¶ 53-54.

## II.    The Mt. Hawley Policies

Mt. Hawley issued five commercial general liability insurance policies to PB.[2]    The "Insuring Agreement" provides,

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

Def's Ex. 2 at MSJ 91; Ex. 3 at MSJ 137; Ex. 4 at MSJ 187; Ex. 5 at MSJ 187; Ex. 6 at MSJ 297 (Dkt. Nos. 71-4 to 71-8).

The insurance applies to property damage only if "caused by an 'occurrence'" and only if the "'property damage' occurs during the policy period." *Id.* Each policy defined "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"; and "property damage" is defined, in relevant part, as "physical injury to tangible property." Def's Ex. 2 at MSJ 101-102; Def's Ex. 3 at MSJ 143-44; Def's Ex. 4 at MSJ 201-02; Def's Ex. 5 at MSJ 255-56; Def's Ex. 6 at MSJ 311-12.

Each policy contained additional terms, conditions, definitions and exclusions, as well as a

---

[2]      The five policies were: (1) MGL0134245 (effective 01/24/03 to 01/024/04), issued to "Pro-Craft Builders, dba Bill Thurman"; (2) MGL0138556 (effective 01/24/04 to 01/024/05), issued to "Pro-Craft Builders, dba Bill Thurman"; (3) MGL0146675 (effective 01/24/06 to 01/024/07), issued to Pro-Craft Builders, Inc.; (4) MGL0149233 (effective 01/24/07 to 01/24/08), issued to Pro-Craft Builders, Inc.; and (5) MGL0154201 (effective 01/24/08 to 03/18/08), issued to Pro-Craft Builders, Inc. Def's Exs. 2, 3, 4, 5, and 6. Mt. Hawley did not cover PB in 2005-06. The parties' cross-motions are directed to coverage provisions common to all policies.

number of endorsements that modified the coverage otherwise provided under the principal form. Two endorsements are at issue in this case.[3] First, the "Residential Developments & Condominiums" exclusion endorsement:

**EXCLUSION – RESIDENTIAL DEVELOPMENTS & CONDOMINIUMS**

. . .

This insurance does not apply, and we are not obligated to defend any loss, claim, "suit" or other proceeding for . . . "property damage" . . . arising from "your work" on or "your products" used in "residential developments."

As used in this endorsement:

"Residential developments" includes but is not limited to single and multi-family dwellings (including condominiums), coach houses, driveways, retaining walls, detached garages, sewer and water lines, parking lots, fences, swimming pools, grading of lots, and landscaping.

Def's Ex. 2 at MSJ 125; Ex. 3 at MSJ 175; Ex. 4 at MSJ 228; Ex. 5 at MSJ 283; Ex. 6 at MSJ 337.

The five Mt. Hawley policies contain slightly different language as to the "Exceptions" to the Residential Developments & Condominiums Exclusion. The 2003-2004 policy provides, in relevant part,

Exceptions:

We will cover claims arising from "your work" or "your product" in the following circumstances:

. . .

(2) "Your work" is performed on or "your product" used in apartment complexes but not including condominiums or town houses that have been converted into apartments.

Def's Ex. 2 at MSJ at 125.

The 2004-2005 and 2006-2007 policies provide, in relevant part,

Exceptions:

United States District Court
Northern District of California

---

[3]  Although Mt. Hawley also cited an additional policy exclusion for "Continuous or Progressive Injury or Damage" as a basis for denying coverage in one of its denial letters, *see* Def's Ex. 13 at MSJ 386 (Dkt. No. 71-15), Mt. Hawley states in its opposition brief that "it has not taken the position that the exclusion would serve as a sufficient basis to deny any duty to defend – at least not on the basis of the information that is presently known." Mt. Hawley's Opp'n at 22:24-17 (Dkt. No. 73).

5

We will cover claims arising from "your work" or "your product" in the following circumstances:

. . .

(2) "Your work" is performed on apartments or "your product" used in apartments. Apartments does not include condominiums or town houses that have been converted into rental units or are rented to others, nor does it include apartment buildings or complexes if they have been converted into condominiums or co-operatives.

Def's Ex. 3 at MSJ 175; Ex. 4 at MSJ 228.

The 2007-2008 and 2008-2009 policies provide, in relevant part,

Exceptions:

We will cover claims arising from "your work" or "your product" in the following circumstances:

. . .

(2) "Your work" is performed on apartments or "your product" used in apartments. Apartments does not include condominiums or town houses that have been converted into rental units or are rented to others, nor does it include apartment buildings or complexes if they have been converted into condominiums or co-operatives.

Def's Ex. 5 at MSJ 283; Ex. 6 at MSJ 337.

The breach of contract exclusion is set forth in a separate endorsement in all five Mt. Hawley policies:

**BREACH OF CONTRACT EXCLUSION**

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," "personal injury," or "advertising injury" arising directly or indirectly out of the following:

a. breach of express or implied contract;

b. breach of express or implied warrant;

c. fraud or misrepresentation regarding the formation, terms or performance of a contract; or

d. libel, slander or defamation arising out of or within the contractual relationship.

Def's Ex. 2 at MSJ 122; Def's Ex. 3 at MSJ 172; Def's Ex. 4 at MSJ 225; Def's Ex. 5 at MSJ 279; and Def's Ex. 6 at MSJ 333.

### III.    Mt. Hawley's denial of PB's claim

PB tendered the *Contempo* cross-complaint to Mt. Hawley's parent, RLI Insurance

6

Company, on or about August 10, 2015.  Andrea Decl. Ex. B at EX B-0006 (Dkt. No. 70-3); Ex. E (Horwitz Depo. at 11:18-22) (Dkt. No. 70-6).  The claim was assigned to John McKee of Mt. Hawley.  McKee's claim notes show that he read the *Contempo* cross-complaint and exhibits, the insurance policies, reviewed the insured's contractor's license, and that he accessed the Contempo HOA website, noting that the "HOA by-laws were adopted on 9/16/71."  Def's Ex. 8 (Dkt. No. 71-10).[4]

In a letter dated August 14, 2015, Mt. Hawley denied coverage for the claim.  Def's Ex. 9 (Dkt. No. 71-11).  The letter quoted the policies' versions of the Residential Developments & Condominium exclusion and stated,

> As the cross-complaint clearly states, this project that you worked on was a condominium project.  As your work was for the homeowners' association and not the individual unit owner, the above-cited exclusions are applicable, and there will be no coverage for this loss under any of the above referenced policies.

> Our decision has been based on the facts as currently presented to us.  If you have additional knowledge or facts relevant to this matter, we would ask that you please notify us in writing so that we can evaluate the additional information or new allegations for potential coverage under the above-referenced policies.

*Id*. at MSJ 361.  PB did not provide any additional information.

PB also tendered the *Contempo* cross-complaint to plaintiff Colony on or about August 10, 2015.  TAC ¶ 20.  In a letter dated July 19, 2016, Colony agreed to defend PB under a reservation of rights.  *Id.* ¶ 21.  According to the summary judgment papers, the *Contempo* litigation is ongoing.

In a letter dated April 27, 2016, Colony's retained defense counsel for PB re-tendered the claim to Mt. Hawley.  Def's Ex. 10 (Dkt. No. 71-12).  In that letter, PB's counsel stated, *inter alia*, that "[t]his is a construction defect matter in which it is alleged that the Pro Craft entities performed various rehabilitation/construction work on a large apartment complex in Union City, California. The HOA is Contempo HOA."  *Id.* at MSJ 368.  The letter stated that "[a]lthough HRB and Contempo have their own issues, damages from water intrusion appears to be the primary allegation

---

[4]  Mt. Hawley asserts that McKee also reviewed Contempo's Covenants, Conditions and Restrictions ("CC&Rs") when he accessed the Contempo website.  Those materials are located at the same location on the Contempo HOA website as the by-laws.  *See* www.contempo-hoa.org/bylaws-and-ccrl.html.  It is unclear whether Colony disputes this assertion, although Colony notes that the claim file does not mention review of the CC&Rs and only mentions the by-laws.

against the contractors." *Id.* The letter also stated,

> To-date, we have not discovered a formal, written contract. All of the work appears
> to have been done by way of work-order and invoice. The earliest date we are aware
> of when Pro Craft did work was 2001 and the latest 2014. This was an ongoing,
> multi-year rehabilitation project for these buildings. There are 158 buildings in all.
> Pro Craft did siding replacement and other "pick-up" carpentry.

*Id.* at MSJ 369. Attached to the letter was a copy of the *Contempo* cross-complaint. *Id.* On May 25, 2016, Mt. Hawley reaffirmed its denial in a letter which reattached its prior denial letter. Andrea Decl. Ex. B-0054-0055 (Dkt. No. 70-3).

In a letter dated October 26, 2017, Colony's counsel wrote to Mt. Hawley and enclosed a copy of a draft complaint for equitable contribution. Def's Ex. 12 (Dkt. No. 71-14). Mt. Hawley responded in a letter dated November 1, 2017. Def's Ex. 13 (Dkt. No. 71-15). The letter stated, *inter alia*, that the "project, as pled in the cross-complaint and even in your draft complaint is a condominium project which falls squarely within the Mt. Hawley policies' Residential Developments and Condominium Exclusions." *Id.* at MSJ 368.

Colony replied in a letter dated November 13, 2017, stating that it disagreed with Mt. Hawley's coverage position because, *inter alia*, "the 'Exclusion- Residential Developments' in Mt. Hawley's Policy incepting in 2003 is ambiguous with respect to developments involving apartments converted to condominiums, a potential basis of coverage which is left open by the vague factual allegations regarding the subject property in Contempo's Cross-Complaint." Def's Ex. 14 at MSJ 389 (Dkt. No. 71-16). Colony did not provide any facts or documents to support the assertion that the Subject Property had been apartments converted to condominiums.

Mt. Hawley states that in response to Colony's November 13, 2017 letter, Mt. Hawley downloaded the Contempo bylaws and CC&R's from the Contempo website, obtained California Division of Real Estate records for the development, obtained a declaration from the current President of the Contempo HOA, and took the deposition of Colony's Rule 30(b)(6) witness, Rebekah Vogel. Def's Ex. 15-20 (Dkt. Nos. 71-17 to 71-22). The Division of Real Estate records consist of a Preliminary Subdivision Public Report and a Final Subdivision Report and describe the development as a "planned development" of "units" and a "recreational lot with a cabana club, recreation building and swimming pool," and "common facilities which will be operated by an

incorporated-owners association." Def's Ex. 17 at MSJ 437; Ex. 18 at MSJ 441. The president of the Contempo HOA, Trong Le, states in his/her declaration, "I am not aware nor have I ever received any information or seen any documents indicating that the Contempo development was ever apartments." Le Decl. ¶ 7 (Def's Ex. 19). Colony's Rule 30(b)(6) witness, Rebekah Vogel, was questioned about Colony's basis for bringing suit against Mt. Hawley, and she testified that she did not know whether the Subject Property had been constructed as a residential condominium project, the nature of the Subject Property today, and whether the Subject Property had ever been an apartment complex. Def's Ex. 20.[5]

## LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

---

[5] Colony objects to Exhibits 17-20 as irrelevant because this evidence was obtained after Mt. Hawley denied the claim in 2015 and 2016. To the extent Colony contends that this evidence is irrelevant to the determination of whether Mt. Hawley properly denied the claim in 2015 and 2016, the Court agrees. However, Colony also contends that Mt. Hawley has a present and future duty to defend, and this evidence is relevant to those questions. The Court overrules Colony's foundation objection to the Le Declaration.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## DISCUSSION

The parties have filed cross-motions for summary judgment regarding Mt. Hawley's duty to defend PB in the *Contempo* cross-complaint. "A liability insurer's duty to defend will arise when a suit against an insured *potentially* seeks damages within the coverage of the policy. An insurer, however, need not defend if the third party complaint cannot, *by any conceivable theory*, raise a single issue which would bring it within policy coverage. Thus, the settled rule is that where a pleading against the insured raises the *potential* for coverage, the insurer must provide a defense. In order to prevail on a motion for the summary adjudication of the duty to defend, 'the insured need only show that the underlying claim *may* fall within coverage; the insurer must prove it *cannot*.'" *Atl. Mut. Ins. Co. v. J. Lamb, Inc*., 100 Cal. App. 4th 1017, 1032 (2002) (emphasis in original, internal citations omitted, quoting *Montrose Chem. Corp. v. Sup. Ct*., 6 Cal.4th 287, 300 (1993)). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* at 1033.

## I.    Duty to Defend

Colony contends that Mt. Hawley has a past, present, and future duty to defend because the *Contempo* cross-complaint alleged "property damage" during Mt. Hawley's policy periods, and thus

established a potential for coverage. Colony argues that the burden then shifted to Mt. Hawley to conclusively prove that coverage cannot exist under any conceivable theory, and that Mt. Hawley did not meet that burden at the time of denial, and that Mt. Hawley cannot meet that burden today. Colony contends that Mt. Hawley's McKee conducted an insufficient investigation of the claim before denying it, and Colony emphasizes that McKee did not contact PB or Contempo prior to the denial. Colony argues that based on the allegations of the *Contempo* cross-complaint, the Contempo development could have consisted of apartments which would have fallen under the exception to the Residential Developments & Condominium Exclusion. Colony also argues that because the *Contempo* cross-complaint mentioned an "office" in the Subject Property, the development could have been a mixed-use development that included commercial uses, thus making the Residential Developments & Condominium Exclusion inapplicable.

Mt. Hawley argues that it properly denied coverage on August 14, 2015, and that no intervening facts or evidence have shown that the denial was improper. Mt. Hawley argues that based on its review of the *Contempo* cross-complaint and exhibits, the Contempo HOA's website (including the bylaws and CC&Rs), when Mt. Hawley denied the claim it knew: (1) the cross-complainant was an HOA and the HOA's membership was "exclusively comprised of the owners of all of the residential units within [a] common-interest development association," *Contempo* Cross-Complaint ¶ 1 (Def's Ex. 1); (2) the HOA sought recovery for "damages to common areas and separate interests under CCP Section 5980," *Id.*; (3) the HOA was "charged with the responsibility for the management, operation and maintenance of the common areas including, but not limited to, all facilities and improvements," *Id.* ¶ 18; (4) the "Subject Property consists of 682 residential units in 168 buildings, including an office structure and a clubhouse structure, with related amenities" and "is commonly known as Contempo Condominiums," *Id.*; (5) on September 2, 1970, the HOA's CC&R's had been recorded, and they stated that "'Association' shall mean and refer to Contempo Homeowners Association," Def's Ex. 16 at MSJ 416; (6) The CC&R's stated, under Article XII Use Restrictions, that "[e]ach lot shall be used as a residence for a single family and for no other purpose," *Id.* at MSJ 434; (7) the bylaws of the Contempo HOA were enacted on September 16, 1971, and these documents along with the CC&R's are still available online:

http://www.contempo-hoa.org/index.html; (8) in 2001, the HOA entered into a contract with PB (attached as Ex. A to the cross-complaint); (9) in 2001, 2008, 2009, 2010 & 2011, the HOA entered into separate contracts with other contractors (*Id*. at Exs. B, C, D, E, F, G, and H thereto); and (10) in 2015, the HOA filed the cross-complaint, and its website confirmed it was a condominium complex, and its bylaws and CC&R's from 1970-71 were still up on its website as the current operative documents (and still are today). Mt. Hawley argues, "[i]n sum, this HOA existed and these were condominiums in 1970-71, 2001, 2008, 2009, 2010, 2011 & 2015, the governing documents were unchanged from 1970-71, the Subject Property was sued upon as condominiums, with legal verbiage and descriptions that are only applicable to a condominium community (not an apartment complex), and with no allegation and no evidence they were ever anything but condominiums. Mt. Hawley properly determined and promptly advised PB that the residential development exclusion applied." Mt. Hawley's Reply at 2-3 (Dkt. No. 75).

The Court agrees with Mt. Hawley and concludes that Mt. Hawley properly denied the claim and therefore did not and does not have a duty to defend PB in the *Contempo* cross-action. The *Contempo* cross-complaint, the exhibits thereto, and the Contempo HOA bylaws and CC&Rs showed that the Contempo Condominiums was a residential condominium development. The *Contempo* cross-complaint alleged that the cross-complainant, Contempo HOA, was a nonprofit corporation whose "membership . . . is exclusively comprised of the owners of all of the residential units within the common-interest development association within the meaning of California Civil Code Section 4100, and California Code of Civil Procedure ('C.C.P.') Section 5980." *Contempo* Cross-Complaint ¶ 1. The cross-complaint alleged that "Pursuant to a Declaration of Covenants, Conditions and Restrictions recorded in the official records of the Recorder for the County of Alameda, as it may have been amended, Contempo is charged with the responsibility for the management, operation and maintenance of the common areas including, but not limited to, all facilities and improvements for certain real property . . . . The Subject Property consists of 682 residential units in 168 buildings, including an office structure and a club-house structure, with related amenities, and is commonly known as Contempo Condominiums." *Id*. ¶ 18. The negligence cause of action alleged that "each Cross-Defendant was familiar with residential multi-family

12

construction techniques including, but not limited to, techniques for supplying labor and/or materials for painting, siding, exterior roofs and related building components . . . ." *Id.* ¶ 54. All of the exhibits to the cross-complaint, which consisted of bid forms or contracts, were between Contempo HOA and different contractors, and the PB bid form stated it was for work on "units" in "Building Three." *Id.* Ex. A at MSJ 23. Attached to one of the contracts was a map of the Contempo development showing a residential development with many units, as well as "Cabana 1" with an office and a pool, and "Cabana 2" with a pool. *Id.* Ex. B at MSJ 27. The CC&Rs, which were mentioned in the *Contempo* cross-complaint, were accessible online on the Contempo HOA website in the same link as the bylaws: the CC&Rs state, *inter alia*, that "Each lot shall be used as a residence for a single family and for no other purpose." Def's Ex. 16 at MSJ 434. All of the information contained in the *Contempo* cross-complaint, exhibits thereto, and on the Contempo HOA website showed that the "Contempo Condominiums" was a residential condominium development, and thus that the work that PB performed for the Contempo HOA at the Subject Property was not covered by the Mt. Hawley policies.

Colony asserts that because the *Contempo* cross-complaint alleged "property damage," that was enough to raise the possibility of coverage, and then the burden shifted to Mt. Hawley to conclusively prove that there was no coverage under any set of circumstances. The Court is not persuaded that Colony (or PB) met this initial burden, as the cross-complaint, exhibits and the HOA's bylaws and CC&Rs all consistently show that the Contempo Condominium was a residential development. However, even if the burden shifted to Mt. Hawley, the Court finds that Mt. Hawley has met its burden because the plain language of the Residential Developments & Condominium Exclusion bars coverage. That exclusion provides,

> This insurance does not apply, and we are not obligated to defend any loss, claim, "suit" or other proceeding for "bodily injury," "property damage," "personal injury," "advertising injury," or medical payments arising from "your work" on or "your products" used in "residential developments."
>
> As used in this endorsement:
>
> "Residential developments" includes but is not limited to single and multi-family dwellings (including condominiums), coach houses, driveways, retaining walls, detached garages, sewer and water lines, parking lots, fences, swimming pools, grading of lots, and landscaping.

13

Def's Ex. 2 at MSJ 125.

"The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., In*c., 11 Cal.4th 1, 18 (1995). "'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.'" *Haynes v. Farmers Ins. Exch*., 32 Cal.4th 1198, 1204 (2004) (quoting *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1115 (1999)). Accordingly, insurance policies "must be interpreted to give effect to the mutual intent of the parties at the time of contracting, and such intent is ascertained, if possible, from the clear and explicit language of the contract." *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co*., 111 Cal. App. 4th 1234, 1243 (2003) (internal citation and quotations omitted). "Coverage provisions are construed broadly in favor of the insured, while exclusion provisions are construed strictly against the insurer. However, strict construction does not mean strained construction; under the guise of strict construction, we may not rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *National Union Fire Ins. Co. v. Lynette C*., 228 Cal. App. 3d 1073, 1077 (1991) (internal citations omitted). "An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected." *Smith Kandal Real Estate v. Continental Cas. Co*., 67 Cal. App. 4th 406, 414 (1998) (citations omitted).

The Court finds that the plain language of the Residential Developments & Condominium Exclusion excludes coverage for PB's work on the Contempo Condominiums, which "consists of 682 residential units in 168 buildings, including an office structure and a club-house structure, with related amenities." *Contempo* Cross-Complaint ¶ 18. Although the insurance policies do not define "residential developments," the Court concludes that a 682 residential unit condominium complex is within a layman's understanding of a "residential development," particularly where the word "condominium" is in both the title of the endorsement and the textual body. The Court also notes that the polices are Commercial General Liability policies, and thus it is entirely reasonable that such a policy would exclude work performed on residential developments.

Colony argues that Mt. Hawley has not conclusively shown that the Residential

Developments & Condominium Exclusion applies because the record does not show any investigation by Mt. Hawley of the property during the policy periods or during PB's work. Colony argues that at the time that Mt. Hawley denied PB's claim, "Mt. Hawley only found evidence as to the composition of the Subject Property in 1970-71 when it was a planned future development of 27 buildings (as opposed to the alleged 168 buildings in the 2015 cross-complaint). Mt. Hawley's one-day investigation did not attempt to determine whether the Subject Property was operated continuously and exclusively as a condominium in the intervening forty years, particularly during the time period of its policies between 2003 and 2008. Nor did Mt. Hawley's pre-denial investigation attempt to determine during its policy periods whether any units were rented out as apartments, or whether the development was at any time of a "mixed use" (including commercial or other non-residential uses)." Colony's Opp'n at 9-10 (Dkt. No. 72). Colony asserts similar arguments about Mt. Hawley's post-denial investigations, arguing that the real estate records, the Contempo HOA President's declaration, and Colony's Rule 30(b)(6) deposition testimony do not conclusively establish that the Contempo Condominiums were not apartments or a mixed use development between 2003 and 2008. *See id*.

"An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability," *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995), and there is "no authority permitting an insured to manufacture hypothetical scenarios beyond those encompassed by the pleadings or the facts known to the insurer in order to give rise to a duty to defend." *All Green Elec., Inc. v. Sec. Nat'l Ins. Co*., 22 Cal. App. 5th 407, 417 (2018). Here, there is nothing in the *Contempo* cross-complaint, the exhibits, or the extrinsic evidence – either at the time of the Mt. Hawley denials or currently – to suggest that the Contempo Condominiums were ever apartments or a mixed-use development. To the contrary, everything that is in the record shows that the Contempo Condominiums was and is a residential condominium development.

Colony points to the letter that PB's counsel sent in 2016 when PB retendered the claim to Mt. Hawley as extrinsic evidence showing that the claim was potentially covered. In that letter, PB's lawyer characterized the *Contempo* cross-complaint as "[t]his is a construction defect matter in which it is alleged that the Pro-Craft entities performed various rehabilitation/construction work

15

on a large apartment complex in Union City."  Andrea Decl. Ex. B at B-0052 (Dkt. No. 72-3).

However, the cross-complaint did not allege that PB performed work on an "apartment complex,"

and PB's lawyer did not provide any facts, documents, or any evidence that the Contempo HOA

was an apartment complex.  As such, the lawyer's mischaracterization of the *Contempo* cross-

complaint is hearsay that did not create a potential for coverage.[6]  *See Sony Computer Enter. Am.

Inc. v. American Home Assur. Co.*, 532 F.3d 1007, 1021 (9th Cir. 2008) ("American Home need not

rely on the assertions of Sony's own counsel about potential covered claims in determining whether

it has a duty to defend.").

Colony also relies on PB's "Commercial Insurance Application" that PB submitted with Mt.

Hawley in December 2002.  Fedor-Thurman Decl., Ex. 1 (Dkt. No. 72-13).  Question 8 of the

Contractors Questionnaire asked, "List current projects currently underway or planned for the next

year, including values," to which PB responded, "Light carpentry on school modernization" and

"siding replacement on apartments."  *Id*. at EX 1-0288.  Question 23 asked, "Has or will any work

involve the construction of, or be for, condominiums, townhouses or apartments?"  *Id*. at EX 1-

0289.  PB responded, "Yes" and "Apartments."  *Id*.[7]  Mr. Fedor-Thurman states in his declaration

that his answers to questions 8 and 23 "refer[ed] to the siding work for which Pro-Craft had bid for

structures located at 4190 Gemini Drive in Union City, CA."  Fedor-Thurman Decl. ¶ 2 (Dkt. No.

72-13).

Colony's reliance on PB's December 2002 insurance application is misplaced.  The

insurance application (and Mr. Fedor-Thurman's current statements regarding that application) is

irrelevant to the question of whether the Mt. Hawley policies provide coverage for the *Contempo*

cross-action.  Coverage is determined by "comparing the allegations of the complaint with the terms

of the policy."  *Atl. Mut. Inc. Co.*, 100 Cal. App. 4th at 1033.  PB's 2002 insurance application is

not an extrinsic fact that would give rise to the duty to defend because, *inter alia*, there is no

suggestion in the record that PB cited or relied on the 2002 insurance application when the claim

---

[6]  The Court sustains Mt. Hawley's hearsay objection.

[7]  At the hearing, Colony's counsel stated that Mr. Fedor-Thurman's "apartments" answer may have been a mistake and that it was corrected in later applications.

was tendered in 2015 or 2016.  Further, there is nothing on the face of the 2002 insurance application that suggests that the "apartments" answers to Questions 8 or 23 related to the *Contempo* cross-action.[8]

## II.    Ambiguity

Colony also contends that the Residential Developments & Condominium Exclusion is ambiguous because the exclusion can be reasonably interpreted to apply only to the specific structures listed and not on a development-wide basis.  Colony argues that the exclusion does not refer to "all work" in a "residential development" but rather that the text[9] of the exclusion refers to specific structures.  "Residential developments" is not defined in the policy.  Colony analyzes the exclusion as having 11 specific parts:    (1) "single and multi-family dwellings (including condominiums)"; (2) "coach houses"; (3) "driveways"; (4) "retaining walls"; (5) "detached garages"; (6) "sewer and water lines"; (7) "parking lots"; (8) "fences"; (9) "swimming pools"; (10) "grading of lots"; and  (11) "landscaping."[10]    Colony argues that "the sole reference to 'condominiums' in (1) is in the context of structures used as 'single and multiple family dwellings' including such dwellings as condominium developments."  Colony's Opp'n at 14 (Dkt. No. 72). Colony asserts, "if part (1) of "Residential Developments" indeed applies to *all structures in*

---

[8]    Moreover, the Court notes that in the 2002 application in the Applicant Information Section under "Nature of Business/Description of Operations by Premise(s)," Mr. Fedor-Thurman wrote, "Sub-Contractor specializing in small commercial projects.  Remodel only."  Fedor-Thurman Decl. Ex. 1 at EX 1-0283. Similarly, question 5 of the Contractors Questionnaire asked for the percentage of types of Residential and Commercial work performed by the applicant; PB indicated that none of its work was Residential and "100%" of its work was Commercial "Remodeling."  *Id.* at EX 1-2087.

[9]  The language at issue is:

"Residential developments" includes but is not limited to single and multi-family dwellings (including condominiums), coach houses, driveways, retaining walls, detached garages, sewer and water lines, parking lots, fences, swimming pools, grading of lots, and landscaping.

Def's Ex. 2 at MSJ 125; Ex. 3 at MSJ 175; Ex. 4 at MSJ 228; Ex. 5 at MSJ 283; Ex. 6 at MSJ 337.

[10] The numbering is Colony's.

*condominiums*, there is no reason to include the <u>preceding</u> phrase 'family dwellings' which is rendered meaningless (*i.e.*, both dwellings and non-dwellings are excluded if they are part of a condominium development). Further if all structures within a condominium development are excluded, as Mt. Hawley contends, there is no reason for the <u>subsequent</u> language which separately lists certain types of structures in parts (2) through (11)." *Id.* (emphasis in original). Colony argues that "includes but is not limited to" does not save the exclusion from ambiguity because the phrase is "boundless" and would permit an insurer to argue that any structure, although not contained in the list of examples, may be within the scope of the exclusion.

Colony argues that the *Contempo* cross-complaint alleges that the Subject Property includes "an office structure and a club-house structure," and that these structures are not "family dwellings" nor are they any of the other listed structures. In addition, Colony asserts that PB did siding work on a "cabana," *see* Fedor-Thurman Decl. ¶ 3, which is not a listed structure. Colony argues that the Court should reject Mt. Hawley's broad interpretation of the Residential Developments & Condominium Exclusion, which would apply to all structures within a condominium development, and instead apply a narrower interpretation which only applies to family dwellings and specifically listed structures, which Colony asserts would provide coverage in this case. Colony also relies on *Mt. Hawley Ins. Co. v. Total Building Syst. Inc.*, No. CV-06-PCT-NVW, 2008 WL 2757076, at *9 (D. Ariz. July 14, 2008), in which the court held, under the circumstances of that case, that Mt. Hawley's Residential Developments & Condominium Exclusion was ambiguous and did not bar coverage for work performed on a commercial time-share condominium development. *See id*. ("Given the restrictions on the use of the units, the nature of the ownership interests, and the consequence of ambiguity in the insurance contract, the Project is not a residential development within the meaning of the policy exclusion. Rather, it is a diffusely owned commercial vacation facility and investment vehicle. . . . The development here is functionally similar to a commercial hotel resort. The plain language of the policy excludes residential developments, and the use of the term 'condominium' cannot be taken out of that context. The exclusion must be construed in favor of coverage.").

Mt. Hawley argues that the Residential Developments & Condominium Exclusion is

18

unambiguous in its application to this case. Mt. Hawley argues that the exclusion applies to work performed on the entire "residential development" and that the list of structures is illustrative and not exclusive. Mt. Hawley also argues that Colony's interpretation fails to give meaning to the word "development." Mt. Hawley cites several cases in which courts have enforced residential development exclusions to exclude or limit coverage for work performed on any part of a residential development or project. *See, e.g.*, *California Traditions, Inc. v. Claremont Liab. Ins. Co.*, 197 Cal. App. 4th 410, 418 (2011) (exclusion for "work that is incorporated into a condominium project" barred coverage for allegations of damage to single-family home built within the project); *Atain Specialty Ins. Co. v. North Bay Waterproofing, Inc.*, No. 12-cv-03339-JST, 2013 WL 1819609, at *5 (N.D. Cal. Apr. 30, 2013) (enforcing residential exclusion and holding "other residential or tract housing project" encompassed apartment complex consisting of 124 residential units, a leasing office, a pool, gym, and community center).

An insurance policy provision is "ambiguous when it is capable of two or more constructions both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyer's Mutual Ins. Co*., 5 Cal.4th 854, 867 (1993) (emphasis in original). "In analyzing a policy for uncertainties, the language used must be read in its ordinary sense, according it the meaning which would ordinarily be attached to it by a layman." *NN Investors Life Ins. Co. v. Superior Court*, 208 Cal. App. 3d 1070, 1072 (1989). "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982). "Any doubts, uncertainties, or ambiguities in policy language must be resolved in favor of the insured. However, this principle of construction comes into play only if it is first determined that an ambiguity exists, which is also a question of law." *NN Investors*, 208 Cal. App. 3d at 1072. "The fact that a term is not defined in the policies does not make it ambiguous." *Ortega Rock Quarry v. Golden Eagle Ins. Corp*., 141 Cal. App. 4th 969, 977 (2006)

"The proper question is whether a particular phrase is ambiguous in the context of *this* policy and the circumstance of *this* case." *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co*., 101 Cal. App. 4th 1038, 1056 (2002) (emphasis in original). The Court concludes that in the context of this case, the Residential Developments & Condominium Exclusion is not

ambiguous and that it includes the Subject Property. The plain language of the exclusion applies to "residential developments" and "condominiums," "including but not limited to" a list of examples of structures and common areas found within residential developments such as "coach houses" "parking lots" and "swimming pools." A condominium development consisting of residential units and common spaces such as a club-house structure and cabana is a "residential development," and the structures are similar to those included in the non-exhaustive list contained in the exclusion. Similarly, the "office structure" that is mentioned in the *Contempo* cross-complaint (and which appears on the map attached as Exhibit B to the *Contempo* cross-complaint and shown in the same place as the cabana and pool, Def's Ex. 1 at MSJ-27), is also a typical part of a condominium development, and there is no allegation or extrinsic fact suggesting that the office structure is a commercial office. *Cf. Total Building*, 2008 WL 2757076, at *9 (holding time-share condominium development that "is functionally similar to a commercial hotel resort" did not fall within Mt. Hawley's Residential Developments & Condominium Exclusion). To the contrary, the *Contempo* cross-complaint alleges that the Contempo HOA is responsible for the "management, operation and maintenance of the common areas" at the Subject Property, and that the Contempo HOA seeks recovery for damage to those "common areas." *Contempo* Cross-Complaint ¶ 18 (Dkt. No. 71-3).

Courts have held that "the use of the word 'including,' is 'ordinarily a term of enlargement rather than limitation.'" *Court Concepts, Inc. v. Scottsdale Indem. Co*., No. 18-CV-421-GPC-BGS, 2018 WL 3570330, at *7 (S.D. Cal. July 25, 2018) (quoting *Ortega Rock Quarry*, 141 Cal. App. 4th at 981); *see also Hassan v. Mercy American River Hospital*, 31 Cal.4th 709, 717 (2003) ("[T]he word 'including' in a statute is 'ordinarily a term of enlargement rather than limitation.'"). In *Court Concepts*, the court held that a residential project exclusion was not ambiguous and excluded coverage for damage to tennis courts built at residence. The court rejected the plaintiff's argument that the exclusion's use of "including but not limited to" rendered the exclusion ambiguous. *Court Concepts, Inc.*, 2018 WL 3570330, at *7 ("While Plaintiff argues that the exclusion is inapplicable because a tennis court is not a residential structure, the plain language clearly indicates that the exclusion covers more than just residential structures and applies to areas 'appurtenant to' the structures. . . . For clarity, the exclusion provides specific examples to define 'appurtenant' as:

"including but not limited to land acquisition, site improvements, excavation or grading of land, utilities, driveways, walkways, roadways, swimming pools, retaining walls, construction of any other structure, building, or common areas.'  Plaintiff's construction of 'all areas appurtenant to' would ignore the phrase 'including but not limited to' and limit the exclusion to the examples provided under the definition."); *see also Stone v. Hartford Cas. Co.*, 470 F. Supp. 2d 1088, 1098 (C.D. Cal. 2006) (enforcing a professional services exclusion that excluded coverage to damage from professional service that "includes but is not limited to . . . Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, design or drawings and specifications" applied to claims based on professional services "including measuring and handling windows and shear wall, removing drywall and insulation, and working with electricians and plumbers").

In sum, the Court concludes that the Residential Developments & Condominium Exclusion is not ambiguous under the circumstances of this case, and that Mt. Hawley properly denied PB's claim because the *Contempo* cross-complaint alleged property damage to a condominium development.  Because the Court concludes that Mt. Hawley has met its burden to show that there is no coverage under the Residential Developments & Condominium Exclusion, the Court does not address the parties' arguments regarding the Breach of Contract Exclusion.

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Mt. Hawley's motion for summary judgment and DENIES Colony's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: April 15, 2019

SUSAN ILLSTON
United States District Judge

21